UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL STUDENT LEGAL DEFENSE
NETWORK,

        *Plaintiff*,

  v.

UNITED STATES DEPARTMENT OF
EDUCATION,

        *Defendant*.

Civil Action No. 1:19-cv-03473 (CJN)

**MEMORANDUM OPINION**

The sole issue in this Freedom of Information Act case is whether the government's search for responsive records was adequate. The Court concludes that it was, and therefore grants Defendant's Motion for Summary Judgment, ECF No. 12, and denies Plaintiff's Cross-Motion for Summary Judgment, ECF No. 14.

## Background

The Higher Education Act of 1965 (as amended), 20 U.S.C. § 1001 *et seq.*, requires the Department of Education to determine the eligibility of institutions to participate in federal student aid programs. *See generally* 20 U.S.C. §§ 1002, 1091, 1094. In 2014, the Department issued regulations setting a process by which the Department would make such determinations. *See generally* 34 C.F.R. Part 668, Subpart Q (2019) ("Gainful Employment regulations"). As one step in the determinations, the regulations provide for, or perhaps require, the Department to obtain

1

data from the Social Security Administration annually in order to calculate debt-to-earnings ratios for graduates from institutions.  *See* 34 C.F.R. § 668.405 (2019).[1]

In 2019, Plaintiff National Student Legal Defense Network submitted a FOIA request to the Defendant United States Department of Education seeking:

1. Any output provided by the Social Security Administration to the U.S. Department of Education regarding "gainful employment" programs. For purposes of this request, "output" means any data or set up data, regardless of form, that includes aggregate, program-level data on mean earnings, median earnings, and/or debt-to-earnings rates.

2. Any statistical reports provided by the Social Security Administration to the U.S. Department of Education about the matching rate or other assessment of the success of any data match, pursuant to a memorandum of understanding and computer matching agreement between the U.S. Department of Education and the Social Security Administration.

FOIA Letter at 2, ECF No. 12-4; First Hammond Decl. ¶ 8, ECF No. 12-3.  The Network sought "only documents that were provided by [the Social Security Administration] to the Department [of Education] after January 1, 2017."  First Hammond Decl. ¶ 8 (emphasis omitted).

After initiation of this litigation, the Department produced two documents totaling five pages.  The parties agreed to narrow their dispute to the adequacy of the Department's search.  *See* Joint Status Report at 1, ECF No. 10.

The Department assigned the Network's request to the Federal Student Aid office, which, in turn, assigned the request to its Business Operations, Borrower Defense, and Policy Liaison Units.  First Hammond Decl. ¶ 9; Second Hammond Decl. ¶ 9.  The Business Operations and

---

[1] When the Complaint was filed, litigation involving the Department's alleged failure to implement these regulations had been pending in this District.  *See* Compl., ECF No. 1; Docket, *Maryland v. Dep't of Educ.*, No. 1:17-cv-02139-KBJ (D.D.C.).  In July 2019, the Department officially repealed the Gainful Employment regulations, effective July 2020.  *See* Program Integrity: Gainful Employment, 84 Fed. Reg. 31,392 (July 1, 2019).  The repeal is now subject of pending litigation.  *See* Compl., *Am. Fed'n of Teachers v. DeVos*, No. 5:20-cv-00455-EJD (N.D. Cal. Jan. 22, 2020); Compl., *California v. DeVos*, No. 5:20-cv-01889-EJD (N.D. Cal. Mar. 18, 2020).

Policy Liaison Units responded that they were not reasonably likely to have responsive records based upon their duties and areas of responsibility, and that they were unaware of any other locations where responsive records might be located.  First Hammond Decl. ¶ 9.

The Borrower Defense Unit responded that it did not receive responsive records directly from the Social Security Administration but was aware of potentially responsive records from two custodians—Phillip Juengst in the Department's Office of the Chief Financial Officer, and Eric Melis, a former Department employee who worked in the Systems Integration Division.  *Id.* ¶ 10.  Juengst was aware of two responsive spreadsheets and successfully retrieved those documents from his emails.  *Id.* ¶ 11.  The Department then produced these two documents in full.  *Id.* ¶¶ 11–12.

Thereafter the Department moved for summary judgment, arguing that the declarations of Cynthia Hammond, a Group Director of the Policy Implementation and Liaison Group demonstrate that its search was reasonable.  Def.'s Mot., ECF No. 12.  Taken together, the declarations explain that the Department only receives responsive documents from the Social Security Administration upon request; that such requests can only be made by a few Department employees; that Hammond had personal knowledge that just two such requests were made; and that the Department produced two corresponding documents.  First Hammond Decl. ¶¶ 8, 11, 13–16; Third Hammond Decl. ¶ 4–5.  The Network filed a cross-motion for summary judgment, arguing that the declarations should not be presumed accurate because, *inter alia*, they could only be accurate if the Department were not following its gainful employment regulations and the Department never explained the inconsistency.  Pl.'s Mot., ECF No. 14.  Furthermore, the Network argued that even accepting the declarations as accurate the search was insufficient because the

Department never explained how the declarant knew there were only two responsive documents. *Id.*

At oral argument, the Network conceded that the search would be reasonable if the Department could show that it posed only two requests to the Administration during the relevant period, or that the Administration provided only two data sets to the Department. Hearing of February 9, 2021. The Court thereafter permitted the Department to file a supplemental brief and declaration addressing questions relevant to why the Department knew that there were only two responsive documents despite having conducted a limited search. Order of February 11, 2021, ECF No. 21. In particular, the Department had previously explained that it only receives data from the Administration upon request; its supplemental filing expressly stated that it made only two such requests during the relevant time period. Third Hammond Decl. ¶ 5. The Network responded that the Department was obligated to conduct additional search efforts to be sure it had only two data sets. Pl.'s Supp. Br., ECF No. 24.

## Legal Standards

Rule 56 of the Federal Rules of Civil Procedure allows this Court to grant summary judgment when the pleadings, discovery, affidavits, and other material on file show no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

The Freedom of Information Act provides, subject to exceptions not relevant here, that:

> [E]ach agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person. . . . In responding under this paragraph to a request for

4

records, an agency shall make reasonable efforts to search for the records in electronic form or format[.]

5 U.S.C. § 552(a)(3)(A), (C).

The burden of proof in FOIA cases is flipped: the defendant must show that its search was adequate. *Jud. Watch, Inc. v. DOJ*, 2022 WL 898825, at *4 (D.D.C. 2022); *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013). Adequacy depends on the individual facts and circumstances of each case. *See Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). But in all cases the "agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency can satisfy this burden by providing a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.*

The touchstone is reasonableness. *See* 5 U.S.C. § 552(a)(3)(C); *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015). "When a request does not specify the locations in which an agency should search," the Court will not require potentially duplicative searches "if additional searches are unlikely to produce any marginal return." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). "The agency is not required to speculate about potential leads." *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996). "If . . . the requester clearly states that he wants all agency records on a subject, *i.e.*, regardless of their location, but fails to direct the agency's attention to any particular office other than the one receiving the request, then the agency need pursue only a lead it cannot in good faith ignore, *i.e.*, a lead that is both clear and certain." *Id.*

Throughout all of this analysis, the Court must keep in mind that "FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and

5

expertise, is hardly an area in which the courts should attempt to micro manage [sic] the executive branch." *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quoting *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

**Analysis**

The Department argues that the three Hammond Declarations, in combination, demonstrate that (1) it is reasonable to believe there are only two responsive records because the Department made only two requests for records that would be responsive, and (2) the Department searched for and found the two responsive records (albeit in an *ad hoc* manner). These explanations justify summary judgment, the Department contends, because the declarations should be accorded a presumption of good faith, *see Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), that cannot be rebutted by the Network's "purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Just.*, 742 F. Supp. 2d 126, 129 (D.D.C. 2010); *see also Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001) (requiring that a requester present "evidence that the agency's search was not made in good faith"); *cf.* Pl.'s Mot. at 11–16 (speculating about various custodians who may have potentially responsive records and the existence of additional records that may not be "the same as those already produced").

The Network makes two categories of arguments in response. It argues, first, that even crediting the declarations, the Department's search was inadequate because the declarations have inconsistencies or are facially deficient. *See* Pl.'s Mot at 6–13; Pl.'s Supp. Br. at 2–3, 4–5, ECF No. 24. And second, it argues, the declarations should not be credited because they are conclusory and do not explain why the Department did not search for data that its regulations required it to request from the Administration. *See* Pl.'s Supp. Br. at 3–4.

**I.      The Declarations Demonstrate the Department Produced All Responsive Documents.**

The Hammond Declarations explain that in order for the Department to receive data from the Social Security Administration, the Department must first transmit certain data from its National Student Loan Data System mainframe. Third Hammond Decl. ¶ 4. The mainframe is a highly-protected database in which "only three Department employees . . . have the requisite mainframe level of permission to access and retrieve from NSLDS the data required to request SSA data regarding graduate earnings." *Id.* ¶ 4. And "[o]nly two such retrievals were made between January 1, 2017 and May 3, 2019"—the relevant time period for the FOIA request. *Id.*; *see also* Second Hammond Decl. ¶¶ 6–9 (explaining the basis for Hammond's personal knowledge). Because just two retrievals were made, it was reasonable to expect two corresponding requests to the Social Security Administration, and two responses. And the Department found two responses (albeit through an *ad hoc* email search), which it produced. *Id.* ¶ 8.

The Network nevertheless makes several arguments about why the declarations are internally inconsistent or insufficient. It argues that although the declarations state that only two requests for data were made, the Department at least should have confirmed with the limited number of other known custodians that the documents they had were duplicative. But at oral argument, the Network agreed that if the Department was reasonable in its understanding that there were only two responsive documents because there were only two requests for data, then its search was reasonable. *See* Hearing of Feb. 9, 2021. Even absent this concession, the Court concludes that the Department acted reasonably in ending the search after finding and producing the two documents, because the Department had a reasonable basis to believe there were only two responsive documents.[2] *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Hum. Servs.*,

---

[2] After supplemental briefing was complete, the Department submitted a Notice informing the Court that the Department had performed a supplemental search of the email records of three

7

953 F. Supp. 2d 120, 127 (D.D.C. 2013) (concluding that a search was reasonable when agency declined to search potential custodians who asserted they were unlikely to have any responsive records).³

The same reasoning dispenses with the Network's arguments about allegedly overlooked custodians, offices, and duplicate records. The Network argues the declarations do not explain why the FOIA request was assigned to just the Business Operations Unit, Borrower Defense Unit, and Policy Liaison Unit, and not, as the Network hypothesizes, the Office of Postsecondary Education, the Office of the General Counsel, and the Office of the Chief Financial Officer, even though each is involved in the Gainful Employment regulations. Pl.'s Mot. at 8 n.5, 9; Pl.'s Reply at 5–6. In a more typical case, this argument might be fatal to a motion for summary judgment for the reasons the Network asserts. *See Schaerr v. DOJ*, 435 F. Supp. 3d 99, 122 (holding agency's search inadequate when it failed to explain "why no other components of the agency were consulted"). But here, as noted, the Department has done enough to show that it is reasonably likely that there are only two responsive records, both of which have already been produced—and thus that it is not reasonably likely for further searches of other offices to turn up other (non-duplicative) documents. *See Campbell,* 164 F.3d at 28 (concluding that FOIA does not require

---

employees that the Network had specifically identified as likely custodians, Eric Melis, Valerie Sherrer, and Brent Madoo. ECF No. 25. The Department represented that the supplemental search located one duplicate copy of a record that had already been produced, but otherwise turned up no responsive records. *Id.* The Network correctly objected that these representations were unsupported by any affidavit or evidence. ECF No. 27. Nonetheless, to the extent the Court may consider such representations, they weigh in favor of the Court's conclusion that the search was reasonable.

³ The Network's briefs could also be read to argue that even if it were known that a search would produce only duplicative records, the Department is legally obliged to perform the search regardless. *See* Pl.'s Supp. Reply at 2. Not so. *See* 5 U.S.C. § 552(a)(3)(C) (requiring only "reasonable efforts"); *Campbell*, 164 F.3d at 28 (concluding that FOIA does not require "additional searches [that] are unlikely to produce any marginal return").

"additional searches [that] are unlikely to produce any marginal return"). The same logic applies to potential custodians—both known and unknown.

The Network's remaining arguments about inconsistencies in the declarations are overblown. The Network asserts the declarations are inconsistent because only three employees (Melis, Sherrer, and Madoo) have the permission to use the mainframe to request data from the Administration, but that the documents were produced from the emails of a fourth employee (Juengst). Pl.'s Reply at 1, 3–6. But there's nothing inconsistent about the fact that only three employees could *request* data but a broader or different group could *receive* it. In any event, because the request here narrowly targets only the documents *received* from the Social Security Administration, it does not matter whether the documents are produced from the initial recipient or from someone who received an identical copy.

And the Network's arguments against the *ad hoc* nature of the Department's search likewise fail. The Network is correct that "Agency affidavits that 'do not denote which files were searched, or by whom[;] do not reflect any systematic approach to document location[;] and do not provide information specific enough to enable [the requester] to challenge the procedures utilized' are insufficient to support summary judgment." *Shaerr v. DOJ*, 435 F. Supp. 3d 99, 120 (D.D.C. 2020) (quoting *Weisberg v. DOJ*, 627 F.2d 365, 371 (D.C. Cir. 1980)). The Network asserts the Department failed to explain how it knew there were no relevant documents in other units. *See* Pl.'s Reply at 4, n.2, ECF No. 19. And, the Network argues, the Department failed to explain how Juengst searched his own email, Pl.'s Mot. at 12, ECF No. 14 (questioning "how did Mr. Juengst search his email using the four search terms? Did he search his inbox? What about his outgoing mail? Did he search his trash?" etc.), or what his precise job responsibilities were, *id.* at 12–13. But none of that is relevant when, as here, the Department is reasonably likely to

have produced all of the responsive documents notwithstanding the particulars. The reason the Department is "reasonably likely" to have produced all responsive documents has little to do with the method of its search. Rather, it is based on the Department's reasonable understanding that there are only two responsive documents and that it found and produced those two responsive documents.[4]

Perhaps the Network's best argument on this front is that the declarations lack sufficient detail about Hammond's personal knowledge of the data exchanges. The Network emphasizes that a unit that Hammond leads initially asserted it was unaware of the location of any potentially responsive documents, but nonetheless Hammond asserted in her first declaration that, given her duties, she would be "aware if additional responsive records existed." First Hammond Decl. ¶ 16.

The government counters that the Network's speculation about Hammond's knowledge is inappropriate. It is established that a declarant "is deemed to have personal knowledge if [s]he has a general familiarity with the responsive records and procedures used to identify those records and thus is not required to independently verify the information contained in each responsive record." *Inst. for Policy Studies v. CIA*, 885 F. Supp. 2d 120, 134 (D.D.C. 2012). And the government argues it is clear from the declarations that Hammond has subject matter familiarity, personally reviewed the FOIA request, reviewed all produced records, determined the Network "received all records responsive to the Request," and she asserted she would be aware "given [her] duties and responsibilities at the Department" if additional responsive records existed. First Hammond Decl. ¶¶ 14–16.

---

[4] This reasoning also applies to the Network's contention that the declarations describe unproduced responsive documents. Pl. Mot. at 11, ECF No. 13. It is reasonable to believe that if they exist, they would be duplicates. *See also supra* at n.2.

The Court agrees with the government that the declarations, taken together, have done enough to establish Hammond's personal knowledge regarding responsive documents. To be sure, the government puts great weight on Hammond's knowledge. But the record is now clear that Hammond was always aware of the existence of responsive records, just not any located within her group—the Policy Liaison Unit. Second Hammond Decl. ¶ 9. Instead, she ensured the appropriate unit—the Borrower Defense Unit—was included in the search. *Id.* Hammond's awareness is substantiated because she was required to give authorization, in writing, for Department employees to request data from the Administration, and she met weekly with those employees during the relevant period. *Id.* ¶¶ 5–9; Third Hammond Decl. ¶ 4. These points, particularly in combination, explain the basis for Hammond's assertion that she "would be aware if additional responsive records existed." First Hammond Decl. ¶ 16. Any apparent inconsistencies have been reconciled. The declarations are internally consistent and, if credited, establish that the Department produced all responsive records.

**II.     The Declarations Should Be Credited.**

All of that assumes, of course, that the declarations should be credited. The Network presents a different type of argument in claiming they should not. In the Network's view, during the relevant time, the Department was required each year to request from the Administration data used to determine whether certain educational institutions are eligible to participate in Title IV federal student aid. *See, e.g.*, 34 C.F.R. §§ 668.404(a) (2019) ("[F]or each award year, the Secretary calculates D/E rates for a GE program . . ."); 668.405(a) ("[F]or each award year, the Secretary determines the D/E rates for a GE program at an institution . . ."); 668.409(a) ("For each award year for which the Secretary calculates a D/E rates measure for a GE program, the Secretary issues a notice of determination[.]"). Yet the Department failed to produce *any* responsive

documents related to data requests for the Gainful Employment program for Award Years 2016 or 2017.[5]  The Network argues that absent evidence that the Department failed to ask the Administration for that data—or that the Administration failed to provide it—the Department's position that it possesses no other responsive documents is not credible.  *See, e.g.*, *Kronberg v. Dep't of Justice*, 875 F. Supp. 861, 869–71 (D.D.C. 1995) (finding that the agency had failed to demonstrate "beyond material doubt" that a search was adequate where it failed to uncover, without explanation, documentation required by statute and regulation).  Put differently, the Network argues that the Department was required by law to ask the Administration at least two additional times for data (that is, at least four times), but is representing here that it did so only twice in total.

The government responds that its own regulations are irrelevant because "[r]elief for purported violations of regulations is not available under FOIA."  Def.'s Reply at 10, ECF No. 17.  And, it argues, the declarations are clear:  "The Department does not have in the National Student Loan Data System . . . or elsewhere any 'output provided by' SSA 'regarding "gainful employment" programs . . . after January 1, 2017' that Plaintiff sought in its FOIA request[.]"  Third Hammond Decl. ¶ 3 (quoting the FOIA request).

The Court is of two minds on this issue.  On the one, when declarations imply, without explanation, that an agency is acting in a manner inconsistent with its own regulations, it may be doubtful whether a search was adequate.  *See Kronberg*, 875 F. Supp. at 869–71.  It is reasonable in those circumstances to question whether the agency and declarant may be overlooking responsive documents.  This concern could easily be alleviated by a simple admission that an

---

[5] The produced documents were requested and received pursuant to a memorandum of understanding entered into through the Gainful Employment program, but were not made in furtherance of that program.  *See* Third Hammond Decl. ¶ 3.

agency failed to follow its regulations or an assertion that it did not interpret its regulations to be inconsistent with its lack of documents. Here, the Network asserts it would have been content with such an explanation and otherwise trusted the declarations. *See* Pl.'s Supp. Br. at 5, ECF No. 24 ("The Department could have avoided this entire dispute if it had . . . admitted that it failed to follow the Gainful Employment regulation[.]"). But the Department has declined to make such an express statement here, perhaps because it does not want to concede that it was not following the regulation or discuss whether it had a contrary view of its obligations. On the other hand, the government is right that a FOIA case is not the appropriate vehicle in which to litigate those questions. *See supra* at n.1.

The Court concludes that the government has now done enough to demonstrate that—regardless of what its regulations required—the Department's search and declarations were adequate. *See Am. Chemistry Council*, 953 F. Supp. 2d at 127 ("This is [] not a case where the agency has failed to consider a particular source[.]"). The Network certainly has a plausible claim that the Department was required to request data annually under the Gainful Employment regulations, and that the Department has failed to explain expressly why it did not find at least two additional records. But, while the Department has not said so expressly, it has essentially admitted either that it did not comply with the regulations or has a different interpretation of them. Where, as here, the declarations are clear and there is little doubt that the department considered whether it had overlooked the regulations in question, *see* Third Hammond Decl. ¶¶ 3–4, the Court will not force the government to state directly what it has already admitted indirectly.

**Conclusion**

For the forgoing reasons, the Court grants the Defendant's Motion and denies the Plaintiff's Motion. An Order will issue contemporaneously with this Opinion.

DATE: April 26, 2022

                                              CARL J. NICHOLS
                                              United States District Judge